UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

OSCAR MORALES, SR., ET AL.                    CIVIL ACTION

VERSUS                                                    NO. 20-996

ANCO INSULATIONS INC., ET AL.            SECTION "R" (2)


## ORDER AND REASONS

Defendants Huntington Ingalls, Inc. ("Avondale") and Lamorak Insurance Company ("Lamorak") (collectively the "Avondale Interests") move for summary judgment, seeking the dismissal of plaintiffs' claims against them.[1] Defendant Travelers Indemnity Company ("Travelers") joins in the Avondale Interests' motion.[2] Plaintiffs do not oppose the motion. Because there is no genuine dispute as to any material facts, and because defendants are entitled to judgment as a matter of law, the Court grants defendants' motion.

---

[1]     R. Doc. 101.
[2]     R. Doc. 103.

## I.     BACKGROUND

This case arises from occupational exposure to asbestos.  Oscar Morales, Sr. alleges that he contracted mesothelioma as a result of exposure to asbestos during his employment at Avondale.[3]  Morales worked as a tacker for Avondale from December 1, 1970 to January 26, 1973.[4]  He asserts that during this time period he "was frequently and regularly exposed to and did inhale or otherwise ingest substantial amounts of harmful asbestos particles and dust."[5]  Plaintiffs allege that Morales was exposed to asbestos at Avondale from: (1) turbines and insulation, manufactured or supplied by General Electric,[6] (2) boilers and insulation, manufactured or supplied by Foster Wheeler,[7] and (3) the cutting and installing of wallboard, manufactured by Westinghouse.[8]  In February 2020, Morales was diagnosed with malignant mesothelioma.[9]

On March 24, 2020, Morales sued a number of defendants, including Avondale, asserting claims of negligence and strict liability under Louisiana

---

[3]     R. Doc. 1 ¶ 17.

[4]     *Id.* ¶ 17-18.

[5]     *Id.* ¶ 19.

[6]     R. Doc. 101-9 at 2 (Plaintiffs' Responses to GE's Interrogatories).

[7]     R. Doc. 101-10 at 2 (Plaintiffs' Responses to Foster Wheeler's Interrogatories).

[8]     R. Doc. 101-11 at 2 (Plaintiffs' Responses to Westinghouse's Interrogatories).

[9]     R. Doc. 1 ¶ 21.

law.[10]   During the pendency of this action, on May 6, 2020, Morales died, and his surviving heirs, Olimpia Morales and Oscar Morales, Jr., were substituted as plaintiffs.[11]   On September 1, 2020, plaintiffs filed a supplemental and amended complaint, re-alleging Morales's prior claims, and asserting an additional claim for wrongful death under Louisiana law.[12] Plaintiffs also added more defendants, including individual Avondale executive officers, and Lamorak[13] and Travelers, in their capacities as Avondale's liability insurers.[14]

On February 9, 2021, the Avondale Interests moved for summary judgment.[15]   The Avondale Interests contend that plaintiffs' state-law tort claims against them should be dismissed because they are preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA").[16]   On February 10, 2021, Travelers moved for summary judgment on the same grounds.[17]   Plaintiffs have not filed an opposition to either motion.

---

[10]   R. Doc. 1.
[11]   R. Doc. 51 ¶¶ 1-2.
[12]   *Id.* ¶ 3.
[13]   Lamorak was improperly named as OneBeacon America Insurance Company in plaintiff's supplemental complaint.  R. Doc. 101-1 at 1 & n.1.
[14]   R. Doc. 51 ¶¶ 6-10.
[15]   R. Doc. 101.
[16]   *Id.* at 5-13.
[17]   R. Doc. 103.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for

resolution.  *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  (quoting *Celotex*, 477 U.S. at 322)).

In the Fifth Circuit, a district court may not grant a "default" summary judgment on the ground that it is unopposed.  *See Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases).  Even in the context of unopposed motions for summary judgment, the movant must still show that there is no genuine issue of material fact, and that it is entitled to summary judgment as a matter of law.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995).  When a motion for summary judgment is unopposed, a court may accept the movant's evidence as undisputed.  *Morgan*, 114 F. Supp. 3d at 437 (quoting *UNUM Life Ins. Co. of Am. v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002)).  Nevertheless, if the moving party fails to meet its burden, the Court must deny its motion for summary judgment.  *Hetzel*, 50 F.3d at 362 n.3.

6

## III.   DISCUSSION

The Avondale Interests and Travelers assert that plaintiffs' state-law tort claims are preempted by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.*  Both this Court and other sections of this Court have held in similar cases that the LHWCA preempts a plaintiff's occupational-exposure claims against his employer.  *See, e.g.*, *Sentilles v. Huntington Ingalls Inc.*, No. 21-958, 2022 WL 1211429 (E.D. La. Apr. 25, 2022); *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 1001445 (E.D. La. Apr. 4, 2022); *Barrosse v. Huntington Ingalls, Inc.*, No. 20-2042, 2021 WL 4355415 (E.D. La. Sept. 24, 2021); *Krutz v. Huntingon Ingalls, Inc.*, No. 20-1722, 2021 WL 5893981 (E.D. La. Apr. 22, 2021); *Hulin v Huntington Ingalls, Inc.*, No. 20-924, 2020 WL 6059645 (E.D. La. Oct. 14, 2020); *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 5071115 (E.D. La. Aug. 26, 2020); *Cobb v. Sipco Servs. & Marine, Inc.*, No. 95-2131, 1997 WL 159491 (E.D. La. Mar. 27, 1997).  The Court thus largely reiterates its prior analyses on this issue and applies it to plaintiffs' claims.

### A.   Coverage Under the LHWCA

The Court first addresses the question of whether Morales's alleged injuries are covered by the LHWCA.  The LHWCA is a federal workers' compensation statute providing covered maritime workers with "medical,

disability, and survivor benefits for work-related injuries and death." *MMR Constructors, Inc. v. Dir., Off. of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020) (citation and internal quotation marks omitted).  Before 1972, the statute covered only workers on "navigable waters of the United States (including any dry dock)." *Id.* (citing 33 U.S.C. § 903(a) (pre-1972)). But, in 1972, Congress "extend[ed] the LHWCA landward." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719 (1980).

### 1. *Applicable Version of the LHWCA*

Defendants assert that the Court must apply the post-1972 version of the LHWCA to determine whether Morales's alleged injuries are covered.[18] Courts use the "date of injury" to determine which version of the LHWCA applies. *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1029 (5th Cir. 1985).   In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit has held that manifestation, not exposure, determines the date of injury.  *Id.* at 1031.  For example, in *Castorina*, plaintiff's disease, asbestosis, manifested in 1979. *Id.* at 1028.  His exposures occurred between 1965 and 1972.  *Id.* at 1027.  The Fifth Circuit looked to judicial authority stating that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests

---

[18]    R. Doc. 101-1 at 5-6.

itself." *Id.* (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir.), *cert. denied*, 308 U.S. 570 (1939)).  It also inferred Congress's intent from Congress's express adoption of the manifestation rule in 1984.  *Id.* (citing Pub. L. No. 98–426, § 28(g)(1), 98 Stat. 1639 (1984)). In the 1984 amendments to the LHWCA, Congress provided a specific definition of "injury" for occupational diseases:

> [I]n the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease . . . .

Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (1984).  Under *Castorina* and the 1984 amendments, Morales's injury is deemed to arise on the date it manifested.   Here, plaintiffs allege that Morales was diagnosed with mesothelioma on February 24, 2020.[19]  Accordingly, the Court applies the LHWCA as it existed in 2020, the date of his injury.

> 2.   *Applicability of the Post-1972 LHWCA to Morales's Injuries*

Since the 1972 amendments, the LHWCA covers injuries of workers who meet the Act's "status" and "situs" requirements.  *See New Orleans Depot Servs. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 389

---

[19]     R. Doc. 1 ¶ 21.

(5th Cir. 2013).   Defendants contend that Morales meets both requirements.[20]

The "status" requirement limits application of the LHWCA to "traditional maritime occupations."  *Id.*; *see* 33 U.S.C. § 902(3) (defining "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker"). The status test is satisfied when the person is "directly involved in an ongoing shipbuilding operation." *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977).

Here, Morales's employment records state that he worked as a tacker during his tenure at Avondale.[21]  To describe the work of a tacker, defendants submit the deposition testimony of Leon Wallis, a former Avondale tacker, who testified as follows:

> Q. Do you know what a tacker does at Avondale, what their job would have consisted of?
>
> A. Yeah.  Well, a tacker, say you had two big sheets of metal and you had to get them together.  What a tacker would do is come and tack the metal together . . . . All he's trying to do is hold the

---

[20]   R. Doc. 101-1 at 6-8.
[21]   R. Doc. 101-4 at 1-5 (Personnel file); *see id.* at 2 ("Beg. Tacker" starting on 12/1/70"); *id.* at 5 ("Job Classification: Tacker-fitter" on "separation report").

metal together and then a certified welder would come and weld it together.

Q. Is this on ships that this is happening, that this kind of work is taking place?

. . . .

A. Well, the last time I recall, it was flat. It was on the ground. And they'll weld . . . this metal together, then, like I said, a gantry or something will come pick this metal up and take it where it needed to go. But most tackers tack[] on the ground. Now, you can be a tacker inside the ship down in what they call the hole.[22]

Defendants have also produced deposition testimony from Burnett L. Bordelon, Sr., a former shipfitter, who testified that a tacker at Avondale helped shipfitters cut steel and keep the steel plates together as part of the construction process for new vessels and the repair process for older vessels.[23]

The Court finds that Morales's work as a tacker on vessels at Avondale satisfies the status test because it is an "essential step of the shipbuilding process." *See Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977) (holding that a worker who died when a steel plate he was cleaning fell on him satisfied the status test because the "cleaning task was an essential

---

[22]  R. Doc. 101-6 at 30:10-31:5 (Deposition Testimony of Leon Wallis, *Holmes v. Bossier*, No. 18-8518 (E.D. La. 2020)).

[23]  R. Doc. 101-5 at 8:18-9:5 (Deposition Testimony of Burnett L. Bordelon, Sr., *Lefort v. Johns-Manville Corp.*, No. 82-116 (E.D. La. 1984)).

step of the shipbuilding process"); *see also McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) (stating that the LHWCA applies to "longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters"); 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries* § 3:9 (5th ed.) (stating that the LHWCA specifically includes "any harborworker," which includes "shipcleaners, tank cleaners, riggers, carpenters, ship ceilers, cargo checkers, cargo weighers, cargo talleyers, port watchmen, electricians, painters, mechanics, etc."). Thus, the Court finds that the LHWCA's status test is satisfied.

The "situs" test, extended by Congress in 1972, requires that the injury occur on the "navigable waters of the United States" and "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a); *see also Sun Ship, Inc.*, 447 U.S. at 719 ("In 1972, Congress . . . extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States."). Morales's asbestos exposure allegedly occurred on and around vessels being built or repaired at Avondale Shipyard.[24] Specifically, defendants note that

---

[24]    R. Doc. 1 ¶¶ 17-19.

Morales was assigned to work under Chester Blanq,[25] and that, according to testimony from Blanq's clerk, Jesse Hernandez, Blanq oversaw vessels on Avondale's dry docks during the relevant time period.[26]   Defendants additionally submit the affidavit of Albert L. Bossier, Jr., a former Avondale employee, who attested that Avondale was "at all times an employer whose employees were employed in maritime employment upon the navigable waters of the United States of America, and their adjacent banks, specifically, on the west bank of the Mississippi River in Avondale, Louisiana."[27] Accordingly, the Court finds that Morales's alleged exposure to asbestos occurred in a covered situs.  *See Pitre v. Huntington Ingalls, Inc.*, No. 17-7029, 2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018) ("Avondale's vessel construction and repair activities occurred on the west bank of the Mississippi River adjacent to navigable waters.").

In sum, Morales's status falls within the coverage of the LHWCA, and his injuries occurred on a covered situs.  Therefore, the Court finds that plaintiffs could have brought their claims under the LHWCA.

---

[25]    R. Doc. 101-4 at 1, 5 (Personnel file).

[26]    R. Doc. 101-8 at 33:20-34:15 (Deposition of Jesse Hernandez, *In re Hernandez*, No. 19-3605 (Civil District Court for the Parish of Orleans 2019).

[27]    R. Doc. 101-12 at ¶¶ 1, 6.

### B.    LHWCA Preemption

Defendants contend that the LHWCA immunizes them from tort liability.[28]  Section 905(a) of the LHWCA, the employer immunity provision, states:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a).

The Act also provides the exclusive remedy for injuries caused by the negligence or wrongful act of an officer or employee of the employer.  33 U.S.C. 933(i).  Further, the Fifth Circuit has "held that the LHWCA impliedly grants the employer's insurance carrier, and the insurance carrier of co-employees, the same immunity which it grants the employer and co-employees." *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 811 (5th Cir. 1988) (citing *Johnson v. American Mutual Liability Ins. Co.*, 559 F.2d 382 (5th Cir. 1977)).  The LHWCA does not specifically immunize insurers.  *See* 33 U.S.C. §§ 905(a), 933(i).  Nevertheless, the Fifth Circuit has explained that "numerous provisions of the Act and the spirit of the Act as a whole, [which]

---

[28]    R. Doc. 101-1 at 10-12.

equat[e] the insurer with the employer, negate any intent to hold the insurer liable to suit for damages as a third person." *Johnson*, 559 F.2d at 388 & n.10 (citing 33 U.S.C. §§ 905(a), 917(a), 928, 932(a), 933, 935, 936 and 941). Plaintiffs' claims against Avondale and its executive officers, as well as their claims against Lamorak and Travelers in their capacity as Avondale's insurers, are covered by these provisions.   Accordingly, the Court must determine whether the LHWCA's exclusivity provision has preemptive effect over plaintiffs' state law tort claims against these parties.

Federal law applies to questions of preemption.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995).  Federal law can preempt state law in three ways: (1) express preemption, where Congress expresses an explicit intent to preempt state law; (2) field preemption, where the "sheer comprehensiveness" of the federal scheme implies congressional intent to preempt state regulation in the area; or (3) conflict preemption, where the state law either directly conflicts with the federal law or interferes with the regulatory program established by Congress.  *Id.*  The U.S. Supreme Court has set out "two cornerstones" of preemption jurisprudence.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  First, the "ultimate touchstone" is "the purpose of Congress." *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  Second, the Court must "start with the assumption that the historic

police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," especially when the case involves a "field which the states have traditionally occupied." *Id.* (quoting *Lohr*, 518 U.S. at 485) (quotation marks omitted).

Because tort law is a field traditionally occupied by the States, the Court starts with the assumption that Congress did not intend to supersede state law when it enacted the LHWCA. But this assumption does not stand in face of the text of the LHWCA, the purpose behind the statute, and the weight of judicial authority.

Section 905(a) of the LHWCA provides that compensation under the LHWCA is exclusive of all other employer liability, including for actions to recover damages at law. 33 U.S.C. § 905(a). The plain language of this provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statutes." *Cobb*, 1997 WL 159491, at *7 (citing *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 950 (3d Cir. 1990)). Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages. *Id.* The Supreme Court recognized this exchange when it explained:

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance

> between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other.  Employers relinquish their defenses to tort actions in exchange for limited and predictable liability. Employees accepted the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983).

Allowing state-law tort claims against employers would contradict the text of the statute and would frustrate the Act's purpose by undermining the *quid pro quo*.

Indeed, several courts have recognized as much.  The Fifth Circuit held in *Rosetti v. Avondale Shipyards, Inc.*, that the LHWCA bars a "state law negligence claim," because "[u]nder the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer."  821 F.2d 1083, 1085 (5th Cir. 1987).  Further, in *Hetzel v. Bethlehem Steel Corp.*, the Fifth Circuit found that "[p]reemption of [a] state [tort] act is required to avoid frustration of the policies and purpose behind the LHWCA."  50 F.3d at 366-67 (5th Cir. 1995).  In *Hetzel*, the court reasoned that "[c]ongressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory."  *Id.*  Similarly, the Third Circuit in *Peter v. Hess Oil Virgin Islands Corp.*, concluded that "§ 905(a) [of the LHWCA] and the Supremacy Clause bar the Virgin Islands from imposing negligence liability on [a covered

employer.]" 903 F.3d at 953.   The *Peter* court specifically noted that Congress "intended that compensation, not tort damages, [was] to be the primary source of relief for workplace injuries for longshoremen against their employers." *Id.* at 952.

Moreover, this Court has held, in four separate cases, that the LHWCA preempts a state tort claim.  *See Cortez*, 2022 WL 1001445, at *14-18; *Krutz*, 2021 WL 5893981, at *7; *Hulin*, 2020 WL 6059645, at *7; *Cobb*, 1997 WL 159491, at *8 ([A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no fault compensation, and it obstructs the purposes of the LHWCA."). Other sections of this Court have held the same.  *See Sentilles*, 2022 WL 1211429, at *1; *Barrosse*, 2021 WL 4355415, at *10-11; *Dempster*, 2020 WL 5071115, at *7.

Because permitting plaintiffs' state tort claims against his employer, Avondale, and its executive officers, in addition to their insurers, would obstruct the purposes of the LHWCA, the Court finds that these claims are preempted and must be dismissed.  *See Krutz*, 2021 WL 5893981, at *8-9 (finding that the LHWCA preempts plaintiffs' negligence claims against his employer, co-employee, and several of his employers' insurance companies).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment.[29]   Plaintiffs' state-law claims against the Avondale Interests and Travelers are DISMISSED WITH PREJUDICE.   The Court DENIES AS MOOT Travelers alternative motion for summary judgment.[30]

New Orleans, Louisiana, this ___4th___ day of May, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[29]   R. Docs. 101 & 103.
[30]   R. Doc. 96.

19